# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

CASSANDRA PASSMORE,

    Plaintiff,

    v.                                    No. 2:19-CV-0059

TRAVELERS CASUALTY AND SURETY
COMPANY,

    Defendant.

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Dkt. No. 37) and Motion to Strike (Dkt. No. 45) filed by Defendant Travelers Casualty and Surety Company ("Defendant"). Both motions are fully briefed, have been augmented by a hearing before the Court, and are ripe for review. See Dkt. Nos. 41, 46, 48, 50. For the reasons stated below, Defendant's Motion for Summary Judgment, dkt. no. 37, is **DENIED in part** and **GRANTED in part**. Defendant' Motion to Strike, dkt. no. 45, is **DENIED in part** and **GRANTED in part**.

## BACKGROUND

This case arises out of an insurance coverage dispute after Plaintiff Cassandra Passmore ("Plaintiff") reported to Defendant that her home, located at 2303 G Street in Brunswick, Georgia (the

"Residence"), had sustained storm-related damage in connection with Hurricane Irma on or around September 11, 2017 (the "2017 Loss"). Dkt. No. 37-1 ¶¶ 1, 21. At the time of the 2017 Loss, Plaintiff's Residence was insured by Defendant under homeowner's insurance policy number 977220160-633-1 (the "Policy"). Dkt. No. 37-1 ¶ 1.

It is undisputed that hurricane damage is covered under the Policy. Accordingly, Defendant inspected the Residence and issued payments for $5,341.71, which it contended covered the actual cash value of necessary repairs. Plaintiff contends that Defendant did not pay her the appropriate amount and instead values the 2017 Loss at $43,200.00. Dkt. No. 1-1 ¶ 5. Accordingly, Plaintiff alleges that Defendant has breached its contractual obligation under the Policy. See Dkt. No. 1-1. Plaintiff filed the present suit to recover policy proceeds in the amount of $43,200.00, along with Georgia statutory penalties for bad faith and attorney fees. See O.C.G.A. § 33-4-6.

### The Policy

The Policy indisputably includes the following relevant provisions:

#### SECTION I – EXCLUSION

> We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of

any other cause or event contributing concurrently or in any sequence to the loss.

. . .

    **5.**    **NEGLECT**, MEANING NEGLECT OF THE **INSURED** TO USE ALL REASONABLE MEANS TO SAVE AND PRESERVE PROPERTY AT AND AFTER THE TIME OF A LOSS OR WHEN PROPERTY IS ENDANGERED BY A PERIL INSURED AGAINST.

Dkt. No. 37-1 ¶ 48.

**SECTION I – CONDITIONS**

    **2.**    **Duties After Loss.** In the case of a loss to which this insurance may apply, you shall see that the following duties are performed:

. . .

    **d.**    **(1)**    PROTECT THE PROPERTY FROM FURTHER DAMAGE;
          **(2)**    MAKE REASONABLE AND NECESSARY REPAIRS TO PROTECT THE PROPERTY; AND
          **(3)**    KEEP AN ACCURATE RECORD OF REPAIR EXPENDITURES;

. . .

    **f.**    AS OFTEN AS WE REASONABLY REQUIRE:

          **(1)**    SHOW THE DAMAGED PROPERTY;
          **(2)**    PROVIDE US WITH RECORDS AND DOCUMENTS AND PERMIT US TO MAKE COPIES . . .

. . .

    **3.**    **Loss Settlement.** The compensation provided by this policy for a covered property loss does not include compensation for stigma damages or for any actual or perceived reduction or diminution in value of such property that remains or may remain after repair or replacement.

. . .

3

> > c.   4.   We will pay no more than the actual
> >            cash value of the damage until
> >            actual repair or replacement is
> >            complete. Once actual repair is
> >            complete, we will settle the loss
> >            according to the provisions of **c.(1)**
> >            and **c.(2)** above.
> >
> >            However, if the costs to repair or
> >            replace is less than $2,500 we will
> >            settle the loss according to the
> >            provisions of **c.(1)** and **c.(2)** above,
> >            whether or not actual repair or
> >            replacement is completed.
>
>    . . .
>
>    8.   **Suit Against Us.** No action can be brought
>         against us unless there has been full
>         compliance with all the terms of this policy
>         and the action is started within two years
>         after the date of loss.

Id. ¶¶ 49–51.

## Defendant's Estimate

After the 2017 hurricane damage, Plaintiff promptly notified Defendant that she had sustained storm-related damage. Dkt. No. 37-1 ¶ 21. Upon receiving notice of the damage, Defendant sent its claim representative, Thomas Ayer, to inspect the Residence. Id. ¶ 23. Defendant thereafter sent Plaintiff an estimate (the "Estimate") detailing its determination of the cost of repairs associated with the 2017 Loss. Id. ¶ 27. Defendant's Estimate calls for the following repairs: (1) remove and replace the entire roof; (2) repair living room walls; (3) repair bathroom walls and ceiling; and (4) repair bedroom ceiling. Dkt. No. 37-10 at 15.

4

In total, the Estimate calls for $8,560.89 in cost of repairs. Id. at 19. Defendant issued a check to Plaintiff in the amount of $5,341.71, which it calculated to be the actual cash value of the damage. Id. at 19-20. In accordance with the Policy, Plaintiff would receive additional funds once actual repair to the Residence was complete. See id. ("Once actual repair is complete, we will settle the loss according to the provisions of c.(1) and c.(2) above.").

### Capitol City's Proposal

Plaintiff contends that Defendant's Estimate was not sufficient to cover the cost of the damage that her Residence suffered. Dkt. No. 41 at 1. Instead, she requests $43,200 for the damage her Residence suffered in the 2017 Loss. Dkt. No. 41-2 at 3. Plaintiff derives her requested amount of $43,200 in insurance proceeds from a proposal submitted to her from Capitol City Development ("Capitol City"), dated September 19, 2017 (the "Proposal"). See Dkt. No. 37-9 at 15. Capitol City is owned and operated by the repairman Plaintiff hired to complete repairs to the Residence, Mr. Wilfred Atwater. Dkt. No. 37-1 ¶ 13. Mr. Atwater had previously repaired the Residence after the property was damaged by Hurricane Matthew in 2016 (the "2016 Loss"). Id. ¶ 53.

Mr. Atwater testified that he gave Defendant's adjuster, Mr. Ayer, his Proposal "two to three weekends" after Mr. Ayer's first inspection of the Residence (Mr. Ayer's first inspection of the

Residence was on September 22, 2017). Atwater Depo. 72:22-73:19.
Mr. Atwater's list of repairs and associated Proposal is
significantly more extensive and expensive than Defendant's
Estimate of the 2017 Loss. Within the Proposal, Capitol City calls
for the following repairs to the Residence related to 2017 Loss:
"(1) remove and replace the entire roof; (2) remove and replace
rotten wood in the affected area; (3) remove and dispose of all
materials affected by mold; (4) remove and replace 614 square feet
of insulation; (5) remove and replace electrical outlets in the
affected area; (6) remove and replace damaged and collapsed
ceilings and walls in the bedrooms, kitchen, laundry room,
bathroom, and hallway (totaling 614 square feet); (7) remove and
replace the crown molding in kitchen, foyer, and living room; (8)
paint interior (3,600 board feet); (9) install new kitchen cabinets
and counter tops; (10) remove and replace flooring (as specified);
and (11) remove debris from the Residence. Dkt. No. 37-9 at 15."

Apart from an estimated cost for replacing the roof
($9,750.00),[1] none of the other line items contained an associated
cost. Id. Ultimately, Mr. Atwater values the repairs at $43,200.00.
Id.

**Payments to Mr. Atwater**

---

[1] This cost is based on an estimate Mr. Atwater received from KM Homebuilders,
dated July 19, 2017. Dkt. No. 37-6.

Plaintiff has only ever paid Mr. Atwater by check. Dkt. No. 37-1 ¶ 41. Plaintiff issued five of those checks prior to the 2017 Loss. See Dkt. No. 37-1 ¶ 44. In total, the pre-2017 Loss checks from Plaintiff to Mr. Atwater total $10,300.00. Dkt. No. 37-1 ¶ 45. Additionally, Plaintiff paid Mr. Atwater $9,810.00 following the 2017 Loss. Id. ¶¶ 42, 43, 47.

### Defendant's refusal to pay

Defendant contends it was within its rights to deny Plaintiff's claim on three grounds. First, Defendant contends that during the September 22, 2017 inspection of the Residence, its adjuster, Mr. Thomas Ayer, observed storm-related damage to the Residence's roof, living room ceiling, hallway ceiling, bedroom ceiling, and bathroom wall. Id. ¶¶ 24, 25. Mr. Ayer further contends that he did not identify any mold damage, damage to the floor, or damage to the kitchen cabinets or countertops. Id. ¶ 26. On September 25, 2017, Defendant issued payments in accordance with Mr. Ayer's observations. Defendant contends that Plaintiff has not been able to substantiate any damage to the Residence that was not observed by Mr. Ayer during the September 22, 2017 inspection. Id. ¶ 30.

Second, Defendant contends that Plaintiff has failed to provide evidence that shows the amount of the September 25 payment was insufficient. Dkt. 37-2 at 9. Plaintiff relies on Mr. Atwater's proposal to show an estimated cost of repair in excess of

Defendant's estimate and payment. Dkt. 37-9 at 15. Defendant argues that Mr. Atwater's proposal lacks specificity and that he admitted he does not have adequate authority to opine on certain repairs. 37-1 ¶ 29.

Third, Defendant contends that Plaintiff failed to abide by various conditions set forth in the policy because she failed to replace her roof following the 2017 Loss and has failed to cooperate in reporting damage to the property. Id. ¶¶ 36-37. Specifically, Defendant contends that Plaintiff's failure to repair her roof constitutes neglect, and that damage resulting from neglect is excluded from coverage under the Policy. Id. ¶ 48.

## II. Defendant's Motions

Neither party contests that any damage to the Residence caused by Hurricane Irma would be covered under the Policy. Indeed, Defendant has already issued payment to Plaintiff for the losses to the Residence it determined *were* caused by Hurricane Irma following its inspection of the Residence on September 22, 2017. Id. ¶ 30. Plaintiff simply contends that Defendant did not account for all the hurricane damage to the Residence in its Estimate following the 2017 Loss. Dkt. No. 41 at 1. Therefore, Plaintiff contends Defendant "underpaid the amount" she is entitled to recover for storm-related damage pursuant to the terms of the Policy. Id.

8

Comparatively, before the Court is Defendant's motion for summary judgment, wherein Defendant contends it is entitled to summary judgment upon the following grounds: (1) Plaintiff's breach of contract claim against Defendant fails as a matter of law; and (2) Plaintiff's claim for bad faith penalties fails as a matter of law. At the outset, the parties dispute what evidence the Court should consider in deciding the summary judgment motion. In conjunction with Plaintiff's Brief in Opposition, Plaintiff filed an affidavit making additional statements of fact. Dkt. No. 41-2. In response, Defendant filed a Motion to Strike various portions of this affidavit. Dkt. No. 45. Thus, before addressing Defendant's motion for summary judgment, the Court will first address its motion to strike. See Dkt. No. 45.

## MOTION TO STRIKE

### I.   Standard of Review

Motions to strike are governed by Federal Rule of Civil Procedure Rule ("Rule") 12(f). "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Id. An affidavit submitted in connection with a summary judgment motion is subject to a motion to strike if it does not meet the standards set forth in Federal Rule 56. Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000). Pursuant to Rule 56(c)(4), an affidavit used to oppose a motion for summary judgment "must be

9

made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If an affidavit "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" by not complying with the requirements of Rule 56(c), then the Court may disregard the content of the affidavit and consider any facts the affidavit contradicts as "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## II. Discussion

Specifically, Defendant requests that the Court strike various provisions contained in paragraphs three, four, and five of Plaintiff's affidavit attached to her response to Defendant's motion for summary judgment. See Dkt. No. 41-2 ¶¶ 3-5. Specifically, Defendant requests that the Court strike paragraph four of Plaintiff's affidavit because it contains inadmissible hearsay statements that cannot be considered on summary judgment. See Dkt. No. 45. Additionally, Defendant requests the Court strike paragraphs three and five of Plaintiff's affidavit because both paragraphs contain statements that contradict prior sworn testimony. See id. The Court will address each paragraph in turn.

First, Defendant takes issue with the following two sentences in paragraph four of Plaintiff's affidavit:

> Eventually, Defendant sent another representative to look at my home. That representative was able to see that part of the ceiling in the living room had fallen. The Travelers representative promised to replace the roof and to pay for an extensive amount of repair work to my home. Travelers did not keep its promise.

Dkt. No. 41-2 ¶ 4. Indeed, Plaintiff may not declare what Defendant's representative "was able to see," because such statements are not based on personal knowledge. See Rule 56(c)(4); Fed. R. Evid. 701. Plaintiff can of course state that damage to the ceiling was visible during Defendant's second inspection of her home, or she could describe the damage to her ceiling as it appeared during the second inspection. Such declarations are made with personal knowledge and admissible as evidence this Court can consider on summary judgment.

Likewise, "Defendant did not keep its promise" is a legal conclusion. Legal conclusions are not evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). As such, these sentences are due to be stricken from Plaintiff's affidavit, and their contents will not be considered in adjudicating Defendant's motion for summary judgment.

Second, Defendant moves to strike the following sentences from paragraph three of Plaintiff's affidavit:

> I am aware that Thomas Ayers [sic] has given an affidavit stating that he met me at the residence September 22, 2017. I do remember meeting with Mr. Ayers [sic]. At that time, there was evidence of water getting into the kitchen and on the cabinets. I am aware that Travelers did an estimate of the damage pertaining to damage that my home suffered in

11

September, 2017. The estimate was not sufficient to cover the cost of the damage that my home suffered in that loss. Travelers did not pay me the actual cash value.

Dkt. No. 41-2 ¶ 3. Defendant argues that the first two sentences contradict Plaintiff's deposition, in which she stated she did not "recall" any specific individuals present during the September 22 inspection. Dkt. No. 45 at 6-7. As such, Defendant contends that this creates a sham affidavit and should be stricken. Dkt. No. 45 at 8. However, these statements do not create a discrepancy that is inherently inconsistent. It is the role of this Court to distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986). Plaintiff's earlier inability to recall the name and identity of Mr. Ayer goes to her credibility, but it does not warrant the statements to be stricken. See id. at 954 ("[A]ny failures of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact.").

Plaintiff cannot, however, declare that "the estimate was not sufficient to cover the cost of the damage that my home suffered in that loss." Nor can she state that "Defendant did not pay me

12

the actual cash value." Plaintiff fails to set forth any foundation in the record that she is competent to testify to the contents of Defendant's Estimate. See Rule 56(c)(4). In her deposition, she stated, "I never saw anything that gave an estimate . . . at all" and answered "No" when asked if she had any understanding as to what specific things for which Defendant agreed to pay. Dkt. No. 45 at 7.

In her affidavit, Plaintiff purports that she was "aware" of Defendant's Estimate. Id. This awareness, however, does not overcome her lack of personal knowledge regarding the Estimate's contents. Similarly, Plaintiff fails to set forth any foundation in the record that she is competent to testify on the actual cash value of the 2017 Loss. Plaintiff has not shown that she has any personal knowledge of any estimated repair costs or the specific things for which Defendant agreed to pay. Without this information, Plaintiff lacks any basis to evaluate whether they paid her the actual cash value of the repairs. Consequently, these statements will be stricken for lack of personal knowledge and will not be considered in adjudicating Defendant's motion for summary judgment.

As to the remaining line in paragraph four, Plaintiff can declare that "[a]t that time, there was evidence of water getting into the kitchen and on the cabinets." Dkt. No. 41-2 ¶ 3. Plaintiff stated that she personally witnessed water leaking into the kitchen

13

and wetting the cabinets. Id. ¶ 3. Thus, such a statement is based on personal knowledge and therefore admissible as evidence this Court can consider on summary judgment.

Finally, Defendant moves to strike the following sentence from paragraph five of Plaintiff's affidavit:

> It is my belief that Travelers was intentionally trying to mislead and defraud me by telling me that it was too late to bring legal action when Travelers wrote me this letter.[2]

Dkt. No. 41-2 ¶ 5. Plaintiff cannot testify as to the intent of Defendant's representative because such statements are not based on personal knowledge and speculate the intent of someone other than Plaintiff. See Rule 56(c)(4). Nothing in the record indicates that Plaintiff had personal knowledge of what Defendant intended by sending the letter. Thus, that statement is speculative and will not be considered as evidence this Court can consider on summary judgment.

Therefore, Defendant's motion to strike these statements is **GRANTED in part** and **DENIED in part**. The Court considers the affidavit only to this extent in evaluating Defendant's motion for summary judgment below.

---

[2] This refers to a letter Plaintiff received from Defendant stating that Defendant reserved its right to deny all or part of her claim not covered. Dkt. No. 41-2 at 5. The letter incorporates provisions of Plaintiff's policy, but erroneously states that no action shall be brought against Defendant unless the action is started "within *one year* after the occurrence causing loss or damage." Id. at 9 (emphasis added). In fact, Plaintiff's policy does not permit action unless the action is started "within *two years*" of occurrence. Compare id. with Dkt. No. 37-1 ¶ 51 (emphasis added).

**MOTION FOR SUMMARY JUDGMENT**

### I.   Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains

supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## II.  Discussion

### A. Breach of Contract

Plaintiff argues that Defendant has failed to fully perform because Defendant "underpaid the amount that should have been paid for the damages to the home." Dkt. No. 41 at 1. Defendant argues that summary judgment is proper because Plaintiff's breach of contract claims against Defendant fail as a matter of law. Dkt. No. 46 at 2.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." SAWS

16

at Seven Hills, LLC v. Forestar Realty, Inc., 805 S.E.2d 270, 274
(Ga. Ct. App. 2017) (quoting Dewrell Sacks, LLP v. Chi. Title Ins.
Co., 749 S.E.2d 802, 806 (Ga. Ct. App. 2013)). For the reasons
stated below, the Court finds that material factual disputes
preclude summary judgment for the breach of contract claim.

## 1.   Plaintiff's Right to Complain

Defendant argues that because Plaintiff did not comply with
several conditions precedent to coverage, she is barred from suing
Defendant based on a breach of contract. Dkt. No. 37-2 at 7-13.
Specifically, Defendant claims that Plaintiff has (1) not
presented it with any evidence that repairs exceeding the scope of
Defendant's payments are necessary; (2) that even if there are
additional repairs, they are the result of Plaintiff's failure to
protect her property; and (3) that even if there are additional
repairs, the damage underlying the need for those repairs was
caused by the 2016 hurricane and cannot form the basis of this
lawsuit. Dkt. No. 37-2 at 7-14.

Defendant's legal premise—if supported by the undisputed
facts of this case—is accurate. It is well established under
Georgia law that if an insured does not adhere to a policy's
conditions precedent, then she cannot recover, and summary
judgment in favor of the insurance company is warranted. SunTrust
Mortgage, Inc. v. Ga. Farm Bureau Mut. Ins. Co., 416 S.E.2d 322,
323 (Ga. Ct. App. 1992) ("Compliance with the policy provisions is

17

a condition precedent to recovery."); Beck v. Ga. Farm Bureau Mut. Ins. Co., 247 S.E.2d 548, 549 (Ga. Ct. App. 1978) (same).

First, Defendant contends that Plaintiff has failed to provide it with material information demonstrating that repairs exceeding the scope of Defendant's Estimate are necessary. Specifically, Defendant argues that, as a condition precedent, the insured must either show the damaged property or submit verifiable documentation of any disputed damage. See Dkt. No. 37-2 at 8-10; Dkt. No. 37-1 ¶ 49.

Georgia law requires "an insured to provide any 'material information' to the insurer that the insurer is entitled to receive under the insurance policy, and, absent an excusable failure to do so, [such failure] constitutes a breach of the insurance contract." Hines v. State Farm Fire & Cas. Co., 815 F.2d 648, 651 (11th Cir. 1987) (citing Halcome v. Cincinnati Ins. Co., 334 S.E.2d 155 (Ga. 1985)).

The Policy entitles Defendant to receive any "records and documents" as often as Defendant "reasonably requires" after a loss. Dkt. No. 37-1 ¶ 49. It also requires Plaintiff to "show the damaged property" following a loss. Id. Here, Plaintiff maintains that she promptly notified Defendant of the loss after the 2017 hurricane and Defendant had the Residence inspected. Plaintiff also submits that she sent Defendant photographs and documentation

of damage from the 2017 Loss. Dkt. No. 37-3 at 19.[3] Consequently, Plaintiff contends that she fully cooperated with Defendant.

In response, Defendant argues that the record is void of evidence establishing damage outside of that which was outlined in Defendant's Estimate. Dkt. No 46 at 3. However, a genuine factual dispute exists that precludes summary judgment on this issue. Where "an insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by the jury." Diamonds & Denims, Inc., 417 S.E.2d 440 (Ga. 1992).

In this case, Plaintiff has cooperated to some degree. Plaintiff promptly notified Defendant of the 2017 Loss and permitted Defendant to inspect the property. Dkt. No. 37-1 ¶ 21. Mr. Atwater also testified that he submitted his proposal to Defendant following its September 22, 2017 inspection. Dkt. No. 37-5 at 18. Plaintiff has at no point *refused* to provide any specifically requested information in noncompliance of the policy. Whether this degree of cooperation is sufficient to satisfy the condition precedent is a question properly reserved for the jury. As such, this Court cannot find Plaintiff failed to cooperate as a matter of law.

Second, Defendant contends that an additional condition precedent is to protect the property from further damage, make

---

[3] Plaintiff says she provided photographs to Defendant of "all the damages that were done." However, she claims that Defendant has now lost those photos or could not find them. These photographs were not provided in the record.

reasonable and necessary repairs, and keep an accurate record of repair expenditures. Dkt. No. 37-2 at 11. Defendant maintains that Plaintiff cites no record evidence indicating compliance with this condition precedent to coverage (i.e., evidence of accurate records of repair expenditures). Dkt. No. 46 at 5. As such, Defendant argues that its motion for summary judgment should be granted because Plaintiff has not protected the Residence from further damage or kept an accurate record of repair expenditures. Id.

Defendant's reading of the insurance contract is too broad. See Evanston Ins. Co. v. Mellors, 141 F. Supp. 3d 1367, 1373 (S.D. Ga. 2015) (Under Georgia law, "[i]nsurance policies are to be construed strictly in favor of the insured and against the insurer."). The above Policy language is a condition precedent to *coverage*. Plaintiff does not claim that Defendant is liable for subsequent damage to the Residence or for the cost of additional repair expenditures. Plaintiff's only contention is that Defendant underpaid for the damage that existed *at the time* of Mr. Ayer's inspection. Indeed, Plaintiff's dispute over damages is based on Mr. Atwater's proposal which appears to have been drafted three days *before* Defendant's inspection. Dkt. No. 37-9 at 15. The insurance policy requires Plaintiff to "preserve property at and after the time of the loss." Dkt. No. 37-1 ¶ 48.

The record does not demonstrate that Plaintiff failed to comply with any of these conditions between the time of the 2017 Loss and Mr. Ayer's inspection of the property and issuance of an estimate. In fact, by issuing its September 25, 2017 payment, Defendant implicitly demonstrated that Plaintiff was not barred from coverage. As such, Plaintiff has the right to complain about Defendant's alleged failure to fully perform.

In a similar vein, Defendant notes that Plaintiff paid Mr. Atwater $9,810.00 after the 2017 Loss and that additional cosmetic renovations were made on the property. Dkt. No. 37-1 ¶ 47. Defendant also maintains that Plaintiff has presented no evidence tying those funds to any specific repairs performed. Dkt. No. 46 at 3. Defendant contends these payments are relevant because Plaintiff must keep an accurate record of repair expenditures. Dkt. No. 46 at 5. This is immaterial to the contention before this Court. Plaintiff does not contend that Defendant owes her for the cost of Mr. Atwater's services or any repair expenditures. She alleges only that Defendant underpaid what was owed for damages that existed at the time of Defendant's inspection. Such a contention is based on Plaintiff's personal knowledge of water damage to the kitchen cabinets and Mr. Atwater's Proposal. Dkt. Nos. 41-2 at 2, 37-1 ¶ 32. Defendant itself admits that Plaintiff was owed the actual cash value of the cost of repairs regardless of whether repairs were made. Dkt. No. 37-10 ¶¶ 9-12. That Mr.

21

Atwater performed cosmetic repairs on the property after the 2017 Loss does not excuse the alleged nonperformance at issue. A genuine factual dispute still exists as to whether Defendant's September 25 payment constituted full performance.

Third, Defendant asserts that Plaintiff cannot recover for costs of damages arising from her 2016 Loss. The policy provides that "No action can be brought against us unless . . . the action is started within two years after the date of loss." Dkt. No. 37-1 ¶ 51. Defendant is correct. Under Georgia law, lawsuit limitation clauses are validly binding on the parties to an insurance contract. <u>SunTrust Mortgage</u>, 416 S.E.2d at 323. To the extent any claim for damages arises from the 2016 Loss, these damages should be excluded. Plaintiff does not dispute that any loss arising from the 2016 Hurricane is barred. Even so, a genuine dispute of material fact still exists as to whether Defendant fully performed in its coverage of the 2017 Loss.

### 2. Breach

In addition to a right to complain, Plaintiff must show a genuine dispute of material fact exists as to whether Defendant fully performed all of its obligations arising under the contract. Plaintiff contends that Defendant failed to fully perform because Defendant "underpaid the amount that should have been paid for the damages to the home." Dkt. No. 41 at 1. In its motion for summary judgment, Defendant maintains that it has paid everything it is

obligated to under the policy. Dkt. No. 37-2 at 4. Consequently, Defendant argues that Plaintiff's claim fails as a matter of law because: (1) Plaintiff cannot show that she sustained a covered loss; and (2) Plaintiff has failed to present any evidence that the amount of payment was insufficient. Dkt. Nos. 46 at 2, 37-2 at 8.

### Covered Loss

Defendant maintains that Plaintiff cannot show she has sustained a loss covered by the Policy. Dkt. No. 46 at 2. First, Defendant claims Plaintiff has not provided evidence showing any damage existed that was not accounted for in Defendant's Estimate. Dkt. No. 37-2 at 10. Second, even if Plaintiff disagrees with Defendant, there is no evidence that the damage constitutes a covered loss pursuant to its Policy. Id. Since Plaintiff has not presented any experts in this case, Defendant contends Plaintiff cannot present technical causation evidence at trial. Dkt. No. 46 at 4.

In response to Defendant's motion, Plaintiff submitted an affidavit stating that she personally observed "water leaks inside the home due to damage that the roof had suffered" from the 2017 hurricane. Dkt. No. 41-2 at 2. Additionally, she saw "that water had leaked into the kitchen and had wet the cabinets," and that "evidence of water getting into the kitchen and on the cabinets" was present during Mr. Ayer's inspection. Id.

23

Plaintiff does not have to be an expert to conclude that the water in the kitchen was caused by the 2017 hurricane. Pursuant to Rule 56(c)(4), an affidavit used in briefing a summary judgment motion must (1) "be made on personal knowledge," (2) "set out facts that would be admissible in evidence," and (3) "show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). To be admissible evidence, lay witness testimony in the form of an opinion must also be "rationally based on the witness's perception; . . . helpful to . . . determining a fact in issue; and . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; see also Fed. R. Evid. 702. Moreover, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

In Mock v. Central Mutual Insurance Co., this Court held that a lay witness can "offer the facts and even [her] lay opinion as to the origin of a leak because [s]he personally observed openings in the roof." 158 F. Supp. 3d 1332, 1343 (S.D. Ga. 2016). The Court noted that the witness "need not have a scientific or specialized background to know that water . . . entered through openings in the roof." Id. at 1344.

Furthermore, Plaintiff did not have to *actually witness* the hurricane to come to a logical conclusion regarding causation. In a recent Eleventh Circuit case, Greater Hall Temple Church of God

v. Southern Mutual Church Insurance Co., circumstantial evidence
was enough to establish that a hurricane did, in fact, cause damage
to church property. No. 20-10544, 2020 WL 3989081, at *5 (11th
Cir. July 15, 2020). In that case, the Court held causation was
sufficiently established where witnesses, upon their return after
the storm, testified that they "saw leaks in the church building"
and "debris was everywhere." Id. The circumstantial evidence
"furnished facts from which a logical conclusion could be drawn."
Id.

Thus, even though Plaintiff did not personally witness the
cause of water (i.e., the hurricane), the circumstantial evidence
here permits a commonsense inference that it was caused by the
2017 hurricane. "[V]isual observation is not essential in
determining whether a particular force produced a given result."
Id. (quoting U.S. Fire Ins. Co. v. Tuck, 155 S.E.2d 431, 437 (Ga.
Ct. App. 1967)).

As discussed above, Plaintiff states in her affidavit that
the 2017 hurricane caused damage to the kitchen and kitchen
cabinets. Dkt. No. 41-2 at 2. Defendant's representative, however,
testified that he "did not observe . . . any damage to the kitchen
or kitchen cabinets." Dkt. No. 37-10 ¶ 8. It is undisputed that
storm-related damage caused by the 2017 hurricane was a covered
loss under the Policy. Dkt. No. 37-1 ¶ 21. If the storm-related
damage did exist, Defendant was obligated to cover it pursuant to

its policy. See Dkt. No. 37-1 ¶ 21. Consequently, a genuine dispute
of material fact exists as to whether Defendant fully performed
its obligations under the contract.

### 3. Damages

Central to the damages issue is the question of costs of
repair (i.e., how much Defendant allegedly underpaid). Defendant
insists that Plaintiff has failed to present any evidence showing
the amount of payments it issued was inappropriate or inadequate
under the terms of the Policy. Dkt. No. 37-2 at 8.

Plaintiff alleges that Defendant's initial payment was
insufficient to cover the cost of damages, and Defendant should
have instead paid the costs as outlined by Mr. Atwater. Dkt. No.
37-1 ¶ 28; Dkt. No. 41-2 at 3. In support, Plaintiff relies on Mr.
Atwater's written proposal submitted to Defendant, which estimates
a total of $43,200.00 for "home repairs from storm damage." Dkt.
No. 37-9 at 15. Notably, the proposal lists numerous repairs to be
completed but fails to list specific line item costs of each
repair. Id. The only repair that contains a specific line item
cost is labeled "roof replacement" and is coupled with a line item
estimate of $9,750. Id.

In response, Defendant contends that Mr. Atwater had no
authority to opine on the costs of roofing repairs and, thus, his
proposal lacks foundation. Dkt. No. 46 at 4. Additionally,
Defendant argues that neither Plaintiff nor Mr. Atwater has been

able to identify specific individuals or roofers that have provided
any estimate for repairs to the roof that differs from Defendant's
Estimate. Dkt. No. 37-2 at 9.

Indeed, Plaintiff admits that in his deposition, Mr. Atwater
stated, "I don't go out and do roofing so I don't have the authority
to say yes, this is what it's going to cost. That's why I called
on roofing companies to do that." Atwater Dep. 79:1-5. However,
this does not defeat the validity of Mr. Atwater's proposal. Mr.
Atwater specifically stated he "called on roofing companies" to
determine what the roof replacement would cost. Id. In this
instance, Mr. Atwater testified that he did receive estimates from
specific roofers, including one from KM Homebuilders out of
Jacksonville for exactly $9,750 to replace Plaintiff's roof. See
Atwater Dep. 80:12-25, 81:1-16; Dkt. No. 37-6 at 2. Drawing all
inferences in Plaintiff's favor, a reasonable juror could infer
that Mr. Atwater was not opining on the roof replacement, but
instead, incorporated a projected cost because a specific roofer
had, in fact, offered to perform the replacement.[4] Because the roof
estimate exceeds what Defendant's Estimate contemplated for the

---

[4] To the extent Defendant claims that the KM Homebuilder's estimate is hearsay,
that argument does not have merit at this stage of the proceedings. The estimate
would likely fall under the business records exception of the hearsay rule: Mr.
Atwater's cost estimate was prepared in the normal course of business, he
integrated the third-party estimate into his own records, and his deposition
testimony confirms that he regularly relies on the accuracy of such cost
estimates. See Fed. R. Evid. 803(6); Dkt. No. 37-5 at 20.

roof replacement, a genuine dispute of material fact exists as to whether the amount of payment was adequate.

Additionally, Defendant contends that Plaintiff must show "the specific costs of repairs associated with" the remaining damages to maintain her claim. Dkt. No. 46 at 2-3. However, Defendant has not demonstrated why Mr. Atwater's Proposal and testimony are insufficient as a matter of law. "Mechanical and mathematical precision are not required to show the cost of repairs. The law only requires that the evidence be sufficient to enable the jury to estimate the loss or damages with reasonable certainty." Freight Terminals, Inc. v. Ryder Sys., Inc., 461 F.2d 1046, 1053 (5th Cir. 1972); see also id. ("We are also unimpressed with the argument that since the estimate by [Plaintiff] was not specified item by item it was insufficient.").[5] "[T]he ability to estimate damages to a reasonable certainty is all that is required and mere difficulty in fixing the exact amount will not be an obstacle to the award. The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to *cause*, rather than uncertainty as to the *measure* or extent of the damages." ROW Equip., Inc. v. Terex USA, LLC, No. 5:16-CV-60, 2019 WL 6698142, at *5 (S.D. Ga. Dec. 6, 2019) (quoting Pendley Quality Trailer Supply, Inc. v. B&F Plastics, Inc., 578

[5] Fifth Circuit cases decided prior to October 1, 1981 are binding precedent in this circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

28

S.E.2d 915, 919 (Ga. Ct. App. 2003) (emphasis added)).
Consequently, Plaintiff has demonstrated a genuine dispute of
material fact as to the damages resulting from Defendant's alleged
failure to fully perform.

### B. Bad Faith Penalties

Defendant further argues that summary judgment is proper as
a matter of law as to Plaintiff's claim for bad faith penalties.
Dkt. No. 37-2 at 2. The Court agrees.

In Count 9 of the complaint, Plaintiff alleges that she is
entitled to damages and attorney's fees pursuant to O.C.G.A. § 33-
4-6. Dkt. No. 1-1. O.C.G.A. § 33-4-6(a) provides in relevant part:

> In the event of a loss which is covered by a policy of
> insurance and the refusal of the insurer to pay the same
> within 60 days after a demand has been made by the holder
> of the policy and a finding has been made that such
> refusal was in bad faith, the insurer shall be liable to
> pay such holder, in addition to the loss, not more than
> 50 percent of the liability of the insurer for the loss
> or $5,000.00, whichever is greater, and all reasonable
> attorney's fees for the prosecution of the action
> against the insurer.

"To prevail on a claim for an insurer's bad faith under O.C.G.A.
§ 33-4-6, the insured must prove: (1) that the claim is covered
under the policy, (2) that a demand for payment was made against
the insurer within 60 days prior to filing suit, and (3) that the
insurer's failure to pay was motivated by bad faith." Bayrock
Mortg. Corp. v. Chicago Title Ins. Co., 648 S.E.2d 433 (Ga. Ct.
App. 2007); O.C.G.A. § 33-4-6. Bad faith is shown by evidence that

the insurer had no "good cause for resisting and delaying payment." Ga. Int'l Life Ins. Co. v. Harden, 280 S.E.2d 863, 866 (Ga. Ct. App. 1981) (quotation marks omitted). Consequently, penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact. Assurance Co. v. BBB Svc. Co., 576 S.E.2d 38, 41—42 (Ga. Ct. App. 2002). The insurer is entitled to judgment as a matter of law on a bad faith claim if it has reasonable grounds to contest the claim or if the question of liability is close. Id.

Here, Defendant contends that it had a reasonable basis for its coverage decision. Dkt. No. 37-2 at 2. Defendant maintains that it was reasonable to contest additional payments since Plaintiff's demand was received over a year after Defendant had already issued a claim payment. Id. Defendant also argues that it has never denied coverage to Plaintiff, and that when it did issue its initial 2017 payment, it also included instructions to contact Defendant if Plaintiff had any questions about the Estimate. Id. ¶ 24. While these instructions do not have the force of a condition precedent as to bar Plaintiff from pursuing her claim, they are relevant to Plaintiff's assertion of bad faith, namely, the lack thereof.

Plaintiff asserts that a letter sent from Defendant falsely represented to Plaintiff that the present suit was barred because

of a twelve-month suit provision in the Policy. Dkt. No. 41 at 2. In fact, Plaintiff had two years to bring this suit according to the specific provisions of her Policy. Dkt. No. 37-1 at 21.

To the extent Plaintiff argues Defendant defrauded or deceived her into relinquishing her rights, the argument is without merit and fails as a matter of law. Nothing in the record indicates that Defendant ever relied on the erroneous twelve-month provision in contesting Plaintiff's claim. Additionally, Plaintiff has not pointed to any evidence in the record that shows Defendant had an intent to deceive or mislead Plaintiff. Finally, Plaintiff has not pointed to any evidence showing that she read or relied on that letter before filing suit. Even despite the letter, Defendant still had independent reasonable grounds to contest the claims made. As discussed above, disputed questions of fact still exist as to whether Defendant has issued payments for all covered losses and the amount of damage resulting from those losses. Nonetheless, Defendant did not refuse to issue payment on Plaintiff's claim. Dkt. No. 37-1 ¶ 30. It was reasonable for Defendant to issue payments to Plaintiff in 2017 based on the damages outlined in Mr. Ayer's estimate. Consequently, this Court finds that Defendant had reasonable grounds to contest the larger payment demanded by Plaintiff. Plaintiff's bad faith claim fails as a matter of law.

## CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment, dkt. no. 37, is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Plaintiff's bad faith claim. It is **DENIED** as to Plaintiff's remaining claims.

**SO ORDERED**, this 2nd day of October, 2020.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

32